And then let's, Mr. Pence, let's now turn to, so I'll submit 6124. Now let's turn to 6069. Are you prepared for that? Yes, I am, Your Honor. John Pence on behalf of Danny George again. Well, we're now on to the lead plaintiff. The lead plaintiff did, to the extent that our position is the class counsel and the lead plaintiff did nothing to advance the interests of the class or helpful to the litigation on appeal, certainly even more so, Mr. Abernathy had nothing to offer really on the appeal of his incentive award or the attorney's fees, because while he is an attorney, his expertise, his claims expertise is in the oil and gas royalty industry and how those royalties are calculated. And I'm sure he does provide something helpful to the litigation in the earlier stages and drafting the complaint discovery. But the issues on appeal, as you can see from this court's opinion, were about the Erie Doctrine and about, you know, this court's and the Oklahoma Supreme Court's law on incentive awards and fees. Fee calculation, there's no indication. Well, the incentive, just to be clear, the incentive award is permissible under Oklahoma law. It is. We now know that, right. So the objection here is just the $260,000 amount. Is that correct? Well, it's now $232,000. The district court did reduce it a bit from what it was originally. But as with class counsel, that amount. And you're not saying he's entitled, Mr. Abernathy, is entitled to zero. Your objection is to the. I'm not saying that. No, I believe that Mr. Isaacson argued that last time. But that was based on the Johnson case from the 11th. Anyway, Judge Giusti, he awarded around $300 an hour. Yes, correct. And you're advocating for how much per hour would be a reasonable incentive? Well, $300 an hour maybe as an attorney. But I think the case law is clear that you shouldn't be paid as an attorney when you're a lead plaintiff and you're not providing legal services. What was the number you were advocating below? I think in my brief I said that if you take his time from. At the prior fairness hearing, even though there were no time records for either class counsel or lead plaintiff, class counsel did state that Mr. Abernathy had about 250 to 300 hours in the case and multiplying that by, I don't know, $1,000. You know, this court said the set of awards are between $11,000 and $15,000. And I think that's why a lot of circuits have never had a problem with them. But this is getting closer to that salary that the Supreme Court spoke about in Trustees v. Greenow and why they were concerned that lead plaintiffs not be able to essentially make a living just doing these cases professionally. Just so I can understand the apples to apple comparison, the court's award was around $300 per hour. Yes. And it came up with an hour number that you disagree with. What, in your view, would have been an appropriate hourly rate for Mr. Abernathy? Well, not 250. I know that's what class counsel say that I conceded in my earlier brief. But that was just an illustration of what an attorney would get for that much time, 250 to 300 hours. At an attorney's rate, I think it was like $90,000, if you did the math back then. But I don't think that Mr. Abernathy should get paid as if he were a lawyer. So what data points are relevant? I mean, there's no market for class rep services. What's the appropriate data point if it's not going to be an hourly attorney rate? Well, that's a good question. I mean, without any, you know, I don't know whether Mr. Abernathy does anything other than serve as a lead plaintiff in these kinds of cases. But that might be a start for what his reason, the whole theory. So how do we decide abuse of discretion or clear error here without a comparator? Well, then there's the fiduciary, Judge DiGiusti found a range from prior cases. He derived a range of, I think it was 142 to 300, and then he awarded the top end of that range instead of the lower. You know, that's another argument that he should have at least erred on the side of the class here. But if it was your position that Judge DiGiusti should not have treated the class rep as just another lawyer, wasn't it your burden to provide an alternative data point for that? I don't believe so, Your Honor. I mean, I don't have any idea. If you look to the cases in, for example, securities law, where there is a specific provision that a lead plaintiff in a securities case can be compensated for his time spent, or actually it's more employee time committed to the case, you get paid at, it's essentially lost wages. I mean, the idea that your time working on the case took you away from your normal, you know, means of supporting yourself and that you lost some wages there. In the case of a lead plaintiff in a securities case, that's usually its employees' time spent gathering records, et cetera, and sitting for depots. So here I would say, unless there's some evidence of lost wages or lost income from Mr. Abernathy's other vocation, I think it should be a nominal award. I mean, you know, I think this Court's range in the 2018 opinion is a good start. I would note that in STRAC, when they went back down, they reversed a similar type of incentive award that was, I think, around $300,000. I don't recall the exact amount, but that award was settled for $30,000. I think something in that range would be more reasonable. And if you did the math with $30,000 and Mr. Abernathy's time prior to the appeal, I think you'd come out with a pretty fair hourly rate for his time. I guess I understood your objection, or your argument on this issue to be more about that he didn't spend, not so much about the hourly rate, although I know you raised that, but more about that he didn't spend his time on behalf of the class. Right. It's not helpful to the standard. How did it value the class, rather than class counsel? Yeah, the standard under STRAC is helpful to the litigation. The standard under federal law is whether you created or preserved a benefit on behalf of a class of similarly situated persons. But, you know, to the extent that the STRAC standard is a little bit broader, I don't think that Mr. Abernathy's time during that prior appeal meets that standard. Because the position that class counsel and lead plaintiff took there, actually, it was detrimental to the litigation. It prolonged the litigation because it was unreasonable. There was no basis, especially for the argument that an incentive award can be based on a percentage. That's clearly contrary not only to the Tenth Circuit law on incentive awards, but also, we now know, contrary to Oklahoma law, given what STRAC said, it has to be based on your actual time devoted to activities that a lead plaintiff typically does. And such as, you know, producing documents, sitting, discussing the industry with your counsel before the case to educate him, producing documents. But once you're on appeal, on a fee appeal, and even on an incentive award appeal, the lead plaintiff doesn't have any expertise on his own, on the law governing his own incentive award. And there's a lot of time, I don't know what the exact amount, around 100, where Mr. Abernathy was simply reviewing class counsel's filings in the first appeal. Their briefs and their reply briefs, et cetera. I don't know what, you know, that's, this court said in its first opinion that a lead plaintiff could be paid for any time, did not duplicate time that could be more efficiently spent by class counsel, I believe is the way this court put it. And I think, you know, once class counsel, I don't know that Mr. Abernathy provided any feedback on the briefs that was helpful to the class, nor would I expect him to be able to. He's not, he's not a class action attorney. He wouldn't know about Rule 23H, ERIE, you know, whether 23H changed the method of awarding fees in diversity cases, et cetera. I just don't see the benefit there. So I think that time should not have been counted by Judge DeGiusti. That's pretty much all I have on the incentive award. Thank you, Your Honor. Thank you, counsel. May it please the court, Brad Beckwith again for this time, the class representative. So I'm back in my normal role, also an appellee here. Mr. Abernathy is the CEO of Cheapton Royal Company, and he's here on the first row in the courtroom. One of the things I'll just address was the last thing said by counsel was, and I wrote it down, I do not know what Mr. Abernathy did. That's right, because the objectors just weren't involved in the 11-year record here. But the person who does know was Judge DeGiusti, and he made specific findings under Rule 2023 about what Mr. Abernathy did. And the record, I closed the last argument, having to kind of move through quickly about the record. I want to come back to that real quickly, and then we'll, in this context, then I'll talk about the rate. Judge DeGiusti had a very robust record on remand. I would argue he had one the first time as well. We just didn't have the hours for our part or for Mr. Abernathy's. When we went back, we submitted, as I stated earlier, 21 declarations and affidavits. Judge DeGiusti went through those very carefully, and he did it meticulously, even though he's not required to use, as this court has used in some of its opinions, act with a green visor and accountant-type eye. But he did that. And he went through all of the time, both Mr. Abernathy's and ours. He granted a motion to strike two expert reports, finding that they were on legal issues that wouldn't be helpful. And then he went through all of those expert reports and affidavits carefully. One of those expert reports was, as I mentioned earlier, by Jeffrey Miller, who is the leading expert nationally, not only on Lodestar and class action percentage fees, but also on incentive awards. And he also looked to an expert report by another gentleman named Steven Gensler. I don't know if your honors have had the opportunity to deal with Professor Gensler, but he is at University of Oklahoma School of Law. He is the state counterpart. Could you focus in on my question that I had earlier, which is what findings did Judge D'Agosti make about the effort that Mr. Abernathy made on behalf of the class? He made many findings. I'm talking about at the appeal stage now. On the appellate stage? I don't know that he made a... I'm sorry? I thought a big chunk of his award was appeal time. That's actually not correct. How much of it was? 50 hours out of 774. So those 50 hours, how were those hours spent on behalf of the class? Okay, well, I'm going to... And what did the judge say about that? So we have to remember that part of the role under 23-A-4, which is the predicate to having a certified class, is that the class representative must be adequate. And you can go back, when I was a young lawyer, I was doing a lot of securities work. One of the early cases out of the Fifth Circuit was Compact v. Burke. What did the judge say about how those efforts represented or helped the class? The 50 hours on appeal? Right. I don't think he specifically said this hour, that hour helped on appeal. Well, my understanding of the finding that I thought he made, I'm not sure if there were any others related to Mr. Abernathy, was that his time benefited the class because it somehow went towards settlement. Yes, Your Honor. He used the word settlement. Yes. Okay, that's what I want you to talk about. Okay. So let's break that down. It's very important to understand the briefing on this to get to your answer. It's not as direct as you might hope because their briefing, the objector's briefing, misstates very clearly the record on what the hours were and how they were using them. And they use dates. So 2015 and 2016 are very important. We argued the approval hearing in November of 2015. We went on for several months on other things related to that, including a bond. And then we fought to preserve the settlement. I think what Judge Giusti was talking about, Your Honor, is that all of Mr. Abernathy's work that was submitted to him, remember he had the detailed time records from Mr. Abernathy and he reviewed those. He said those were helpful in preserving the settlement for the class. And I think that's what you're referring to and that's what he said. That's what I'm referring to. Was there any other findings about how, other than the settlement, preserving the settlement, what, was there any other findings made about how his time benefited the class? His time on the post-approval stage going into appeal? Yeah, let's just talk post-approval. I don't think so. No, I think he reviewed them. He said it was all part of the... He just didn't say anything at all about that. I wouldn't say he didn't say anything at all. I don't know, settlement, went towards settlement. In preserving the settlement. He was looking at the result of the appellate process, right? Yes, ma'am. Yes, your honor. That's right. And so that's what I'm saying. I don't know that he had the specificity that you're getting towards. When he said settlement, he meant what? Well, I think we have to give him the benefit of the doubt under a clear error standard that when he said settlement, he was talking about preserving that settlement against the attack of the objectors and making sure the settlement wasn't set aside. After the PFR? After the petition for a hearing? Through that point in time, yes. Because once we had the petition for a hearing, which was denied, we still got an amended... Right, that's what I mean. It's the amended result is where the settlement was defined, right? That's correct. So I hope that answers your question. That's just as specific as he did it. And I think we have to be mindful that what Strack told the court to do was go back, look at time spent... On behalf of the class. On behalf of the class. And that's right. I thought... I understand that the district court judge looked at the records, had the records. I'm not suggesting that. I'm not talking about the rate. I'm just talking about what findings were made to show that this was on behalf of the class. And I think you've explained what you think he meant by that. Yes, I do. I think it and I believe I know it. And here's the most important thing I would say. When we look at hours, whether it's attorney hours under a load star, cross check, or on a class rep, it's hard to say which ones are most important. But let's give a little context to the ones here that were on appeal. Had they shown that there was a conflict that busted that settlement. InterVest went bankrupt. Had that settlement gone back, this class would have had nothing. So whatever the fee award is, it's somewhere in that $33, $34 million. That's been sitting there in a low interest bearing account, safest money we could put in it for eight years. Not invested in the market where it could be $70, $80 million. But it would be zero. And when you look at this, some of the arguments about time and how it split between another case, SM, I know y'all have read the briefs, but it's important to understand what happened there. Some of these wells were sold late in the litigation and SM wouldn't settle. And those were severed out. We mediated that case for a long time. That case had a higher damage model than this one. We settled that for $10 million because SM was on the verge of bankruptcy when we settled it. Their stock price was done. So had Mr. Abernathy not helped us, had we not preserved the corpus of this settlement, we wouldn't be here today talking about fees or incentive work because we'd be in bankruptcy court somewhere. What about the hourly rate? I mean, why isn't it a problem that the district court sort of surveyed other incentive awards and came up with this figure? Well, I think your earlier questions of him hit the exact point. There isn't a rate anywhere that we can go say, here's the hourly rate for someone who serves as a class rep. And that's, I understand that's not my question. Why is it appropriate for the district court to have arrived at the number he chose by doing what he did? Because there's multiple answers to that. One, when STRAC says, look at the factors of 2023, and it doesn't say you have to look at them all for a class rep, but it does say it's instructive about what you should do. The two most important factors, always under 2023 under Oklahoma law, are the result achieved, here 100%, and market rate slash results in other cases. So let's compare attorney fee jurisprudence to class rep jurisprudence for just a second. Can I ask you a question so I understand what you're saying? So are you saying that the statute and STRAC direct the district court to look at incentive awards in other cases? Yes, and what the court said is, when you're looking at incentive awards, 2023 on attorney's fees is instructive. So find the factors that matter. There's so many there that matter here. But Oklahoma law is pretty clear that when you're dealing with issues like this, it's paramount. Result achieved, market rate, results in other cases. So if you think about attorney's fees for a second, all the argument about 20% to 30% benchmarks, what is that? That's an averaging of results in other cases. It says, look, if we're going to look and test the record on this case, one of the things we'll look at is, how does it compare to other class actions? By the way, in STRAC, they weren't talking about Oklahoma class actions. They were talking about class actions everywhere. That's what footnote six is talking about. This court's jurisprudence does the same. So let's carry that forward to the fee awarding. There's no market here. I can't go to Domino's and say $20 an hour for a driver, so that's the market that applies for a class rep. There's no class rep market outside of results in other cases. So Judge Giusti looked at other cases, and he looked at two types of other cases. One, class reps where oil and gas is involved. Two, specific cases involving chieftain. And he looked at a range of $142 to $400 on the high end. He didn't take the low end. He didn't take the high end. He chose $300 an hour, which was less than us. Didn't he extrapolate that number, though, from percentage awards? Isn't that how he arrived at the hourly rate? Yes and no. Most of the awards that he looked at were prior to STRAC. Some were after. I think one is after. And in Oklahoma law, that's how it had been done. But you also have to remember in the record here, there was record evidence about Mr. Abernathy is a lawyer. We know the rate. He's not rewarding him as a lawyer under a legal fee analysis, but that has to be instructive. Was there an expert declaration on that part of it? On which part? On the Abernathy fee. Yes. Gensler, Miller, and several of the others. The record's complete. So you would have to say that Judge DiGiusti committed clear error with his flexible, broad discretion that he's allowed. And I just don't think you can do that. So I think when you assess also, Your Honors, the rate, it's not just market rate. We do have to look at results achieved. And we can go back to Volgara's for a second. I've done a lot of securities cases. The average result is 6% to 10% in those cases. That was one of the issues in Volgara's is what was the rate, what was the result obtained. Arguably, it was 15% to 20%. That was a really great result. And it was. Here, we got 100%. There are very few class representatives that will hang in there that long. But he does that. And I think it's important also to look at the risk involved and other factors. Because Mr. Abernathy, some of the briefings suggest he's a professional plaintiff if he's in cases a lot. It's not really what it is. His business, Chieftain's business, is a royalty-owning company. He buys and sells mineral rights. That's his business. In Oklahoma, we have very favorable pro-royalty owner laws. Very progressive and populist. It always has been. And when companies come in that aren't generally Oklahoma companies come in, they charge deductions and make charges that might work in another state but aren't the law in Oklahoma. And Mr. Abernathy has stood up to them time and time again. Not only on his own behalf, but on behalf of royalty owners throughout the state. And we talk about it in the record. But I can tell you that there have been billions of dollars in royalty that has gone to royalty owners in Oklahoma as a result of the stand that Chieftain and this gentleman has made repetitively over the last 20 years. So he's not a plaintiff who's a shill for plaintiff's attorneys. He's a lawyer. He's a royalty owner. He's an advocate. And he works with us to go and defend the rights of royalty owners. And so that is OK to do. It's important in Oklahoma. And the result he achieved here is remarkable. So I think I would just close with this. There may not be an hourly rate that you would go and find that says class rep should be awarded this. But I think this record is very strong with what Judge DiGiusti did. He looked at class representative affidavits, experts, and the market that exists and said this number is fair and reasonable. And I think when you compare that to the time he had, his time was very helpful. And I attested to that as the lead counsel in the case. And under Oklahoma law, that's allowed. And under the Western District Local Rule 54.2, affidavits of class counsel are allowed. And I think that is meaningful in support of his award. Thank you, counsel. Mr. Pence, I think you had some rebuttal time if you wanted it. Thank you. Yes, Your Honor. I would just point out there were statements made about Lee Plante's commitment to this case. I would point out that STRAC lasted seven years between filing and settlement. So if anything, STRAC was the more difficult case, involved more risk. This case has had more litigation after settlement than that one. But, you know, that's not really time where the lead plaintiff would be expected to be making a large contribution of time. And I still contend that, you know, to the extent that there needs to be an hourly rate, that that should have been determined not by dividing a prior percentage-based awards by the number of hours, because that's pretty arbitrary and random. And the range sort of illustrates that. 142 to 400, I think it was, you know, almost demonstrates that that's not a very reliable method of determining someone's time. And I think for the kind of activities that are involved in serving as a lead plaintiff in one of these cases, I think $100 an hour would be more than adequate. And, you know, to answer your question, Judge Moritz, Judge DeGiusti never made any findings about how lead plaintiff's time during the appeal could have possibly benefited the class. He spoke about, you know, the need to carry out or implement the settlement, but that did not involve defending a specific attorney's fee award or an incentive award, which is really more, it should be called a service award, given the way that Oklahoma now authorizes them. It's not really, you know, this court spoke, I think it was in Robles, about whether or not there's an actual need to incentivize plaintiffs to come forward. And when there's not, those things aren't justified. But I think Oklahoma said, you know, we're going to essentially pay somebody for their time spent pursuing litigation-type activities. And I think there's no indication that any of the time post-appeal would qualify. Or, you know, with regard to the settlement itself, even there, there's no indication what Mr. Abernathy did on appeal to help defeat the argument that the alleged conflict of interest that he had meant that the entire settlement should be thrown out. And I don't think that was really ever raised seriously on appeal. I mean, because that would be going, that would be, why would you attack a settlement if it's 100% recovery? Even if he were conflicted, how could somebody who's not conflicted do any better? So I don't think that was a serious issue on appeal. They certainly didn't worry about it. Wilmer, Wilmer Hale didn't spend any time talking about it or briefing it or researching it. I just think that's a red herring to justify not only Mr. Abernathy's time, but class counsel's time. Because without that, they don't really make a serious argument that their time on appeal was for the benefit of the class as opposed to their own benefit. Thank you very much. Thank you, counsel. Appreciate the arguments. Counsel are excused. And case 22-6069 is also submitted. And with that, the court will.